IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN ROBESON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 23-944 |
| MARTIN O'MALLEY,[1] *Commissioner of Social Security*, | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 23rd day of May, 2024, upon consideration of the parties' cross-motions for summary judgment, the Court, after reviewing the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)). *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's

---

[1] Martin O'Malley is substituted as the defendant in this matter, replacing former Acting Commissioner Kilolo Kijakazi pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).

decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[2]

---

[2] Plaintiff argues that the Administrative Law Judge ("ALJ") erred in assessing the medical opinion evidence, in crafting Plaintiff's mental residual functional capacity ("RFC"), and in questioning the vocational expert ("VE"). (Doc. No. 10). Specifically, Plaintiff contends that the ALJ erred by relying on inconsistent and unsupported medical status examinations and by rejecting all consistent and supported specific evaluation and examination findings from Plaintiff's treating and examining providers. (*Id.* at 12-15). Further, Plaintiff posits that the ALJ erred in assessing Plaintiff's mental RFC by relying on an inaccurate and unsupported lay interpretation of Plaintiff's medical records. (*Id.* at 15-18). Lastly, Plaintiff asserts that the VE testimony was inadequate because it relied on an incomplete RFC. (*Id.* at 18). For the following reasons, the Court disagrees and affirms the ALJ's finding of non-disability.

During the relevant period, Plaintiff suffered from a variety of mental impairments including panic attacks, bipolar I disorder, attention deficit hyperactivity disorder ("ADHD"), and generalized anxiety disorder. (Doc. No. 10 at 3-6). Evaluating Plaintiff's impairments during the relevant period, the ALJ crafted the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels. However, the claimant is capable of understanding and remembering simple instructions; using judgment to make simple work related decisions; and occasionally interacting with supervisors, coworkers, and the public. He is capable of carrying out simple instructions; performing work that does not require a specific production rate such as assembly line work or work that requires hourly quotas. He is capable of dealing with frequent changes in work setting; and performing work that would never expose the claimant to dangerous heights or machinery.

(R. 20). Using this RFC, the ALJ relied on VE testimony to find that other work existed in the national economy that Plaintiff could perform. (R. 30-32).

The Court finds no merit to Plaintiff's argument that this RFC was deficient. The Court first rejects Plaintiff's argument that the ALJ erred in assessing the medical opinion evidence. The Court notes that for cases such as this one, filed on or after March 27, 2017, the regulations have eliminated the "treating physician rule." *Compare* 20 C.F.R. § 404.1527(c)(2) (applying to cases prior to the amendment of the regulations) *with* 20 C.F.R.

§ 404.1520c(a) (applying to later cases).   While the medical source's treating relationship with the claimant is still a valid consideration, "the two most important factors for determining the persuasiveness of medical opinions are consistency and supportability."   82 Fed. Reg. 5844-01 at 5853 (Jan. 18, 2017).   *See also* 20 C.F.R. §§ 404.1520c(b) and (c). One court has explained the distinction between supportability and consistency as follows: "supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record."   *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021).

In this case, the ALJ reviewed many medical opinions assessing Plaintiff's psychological health.   Among these was the opinion of Dr. Daniel Marston, Ph.D., ABPP, who concluded that Plaintiff's records were consistent with diagnoses of ADHD, generalized anxiety disorder, and obsessive compulsive disorder ("OCD"); he also opined that his clinical impression was consistent with Plaintiff's diagnoses of ADHD and bipolar disorder.   (R. 477-79).   Additionally, Dr. Lindsey Groves, Psy.D., performed a psychological evaluation of Plaintiff and found that the results supported the conclusion that Plaintiff had functional limitations and was unable to work at that time.   (R. 485). The prior administrative medical findings contained opinions from Dr. Erin Nicole Urbanowicz, Psy.D., and Dr. Fasial Roberts, Psy.D., who both opined that Plaintiff was mild and moderately limited in the paragraph B criteria.   (R. 94-95, 114).   The record also contains a third-party statement from a forensic vocational expert, James Primm, M.Ed., CRC, who opined that Plaintiff was unable to maintain attention for two-hour segments, maintain regular attendance, make simple work-related decisions, complete a normal workday, and get along with coworkers.   (R. 423).

Turning to the first opinion, the ALJ's analysis of Drs. Marston's opinion was logical and is supported by substantial evidence.   The ALJ explained that Plaintiff presented with ADHD and bipolar disorder and that this was echoed by the wider record. (R. 26).   However, the ALJ noted that the supportability and consistency of this opinion was eroded because Dr. Marston "failed to provide a functional evaluation of the claimant's precise limitations . . . Thus, Dr. Marston's clinical impression was too limited in scope to be persuasive."   (*Id.*).   The ALJ went on to explain that Dr Marston's opined serious limitations were "inconsistent with the wider record showing 'no mood swings' and good mental status findings" and that Dr. Marston offered "[n]o detailed explanation . . . to support such limitations . . . [and the] evaluation was noted to have internal inconsistencies that would likewise detract from supportability."   (*Id.*).   This was a sufficient consistency and supportability analysis, as the ALJ analyzed the supportability of Dr. Marston's opinion in comparison to his own explanations for his opined limitations and the consistency of his opinion in comparison to the wider record.   *See Cook*, 2021 WL 1565832, at *3.   Accordingly, the ALJ's finding that Dr. Marston's opinion was of "little persuasive value" is supported by substantial evidence.   (R. 26).

The ALJ also sufficiently analyzed Dr. Groves' opinion. The ALJ found this opinion was "too limiting to be persuasive" because it was "not consistent with treatment notes . . . [and] was not consistent with the record as a whole." (R. 27). The ALJ analyzed the supportability of Dr. Groves' opinion by noting that Dr. Groves' treatment notes did not show that Plaintiff had any serious deficits, yet Dr. Groves opined that Plaintiff "could not work at present[.]" (*Id.*). The ALJ also found this opinion was not well supported as Dr. Groves "appeared too heavily influenced by an evaluation by Dr. Coburn, which was remote, performed in April 2017, and lacked standard validity measures." (*Id.*). This was a sufficient consistency and supportability analysis to support the ALJ's decision finding this opinion of little persuasive value. (R. 26-27).

Additionally, the ALJ sufficiently analyzed the opinions of Drs. Urbanowicz and Roberts. The ALJ found both of these opinions "somewhat persuasive" as they were "supported by the detailed medical analysis showing no recent inpatient psychiatric admissions and evidence of overall psychiatric stability in treatment notes." (R. 24). Further, the ALJ stated that these opinions were consistent with the wider record, noting, "[t]he wider record was also generally consistent with limiting the claimant to at least simple work and need for limitations in environment." (*Id.*). Additionally, the ALJ extended Plaintiff's limitations beyond those opined by these doctors by "further limit[ing] the claimant to have moderate limitations in all four broad areas of mental functioning." (R. 25). Accordingly, the ALJ's analysis of Drs. Urbanowicz' and Roberts' opinions is supported by substantial evidence.

Further, the ALJ sufficiently considered the third-party vocational statement of Mr. James Primm, M.Ed., a forensic vocational expert. Mr. Primm prepared a report at the request of Plaintiff's counsel in connection with Plaintiff's claim for short-term disability benefits. (R. 422-23). He concluded that Plaintiff was unable to maintain attention for two-hour segments, maintain regular attendance, make simple work-related decisions, complete a normal workday, and get along with co-workers. (R. 423). In evaluating this statement, the ALJ correctly explained that this was not a medical opinion that required an evaluation of its persuasiveness. (R. 28); *see* 20 C.F.R. § 404.1513(a)(2). Despite this, the ALJ analyzed this opinion thoroughly based on the supportability and consistency factors. (R. 28-29). The ALJ concluded that Mr. Primm's statement was neither consistent nor supported because the wider record showed Plaintiff had no recent inpatient psychiatric admissions, showed his mood was "really stable," and his mental status examinations were within normal limits. (*Id.*). Further, the statement was not supported as Mr. Primm relied on conclusory statements of marked and significant impairments and was based on medical opinions and statements rendered well before the relevant period. (R. 28). This analysis is supported by substantial evidence.

The Court likewise finds no merit to Plaintiff's argument that the ALJ inaccurately determined Plaintiff's mental RFC by failing to adequately consider Plaintiff's bipolar

disorder and panic attacks and by relying on an inaccurate and unsupported lay interpretation of Plaintiff's medical records. (Doc. No. 10 at 15-18). The Court notes that in making an RFC determination, the ALJ must consider all the evidence before him. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The ALJ must give an indication of the evidence which he or she rejects and the reasons for discounting such evidence. *See id.*; *Cotter*, 642 F.2d at 705. Additionally, "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). *See also* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); SSR 96-5p, 1996 WL 374183 (S.S.A.) (July 2, 1996). "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 Fed. Appx. 6, 11 (3d Cir. 2006). *See also Chandler*, 667 F.3d at 362 (holding that each fact incorporated into the RFC need not have been found by a medical expert). As the United States Court of Appeals for the Third Circuit explained in *Titterington*, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." 174 Fed. Appx. at 11. Accordingly, an ALJ is not prohibited from making an RFC assessment even if no doctor has specifically made the same findings. *See Hayes v. Astrue*, Civ. No. 07-710, 2007 WL 4456119, at *2 (E.D. Pa. Dec. 17, 2007).

Here, the ALJ adequately considered Plaintiff's bipolar disorder and panic attacks in determining his RFC. First, the ALJ noted that Plaintiff was suffering from Bipolar I Disorder during the relevant period. (R. 16, 22). Despite this, the ALJ noted that Plaintiff had "good mental status examination results" and "really stable mood with no extremes of mood, no mood swings, no suicidal ideation, and okay sleep." (R. 22-23). Second, the ALJ noted that Plaintiff testified he had "panic attacks at least once and sometimes twice per week . . . [and that these last] 45-60 minutes each time with severe shaking, twitching, hyperventilating, and pain." (R. 21). However, the ALJ found Plaintiff's testimony not credible. (R. 21-22). This was supported by the record evidence, which showed that Plaintiff reported to his doctors that he had no panic attacks. (R. 23-25, 28). Based on this, the ALJ exercised his discretion and did not account for limitations in Plaintiff's RFC to accommodate for Plaintiff's bipolar disorder or panic attacks beyond the existing limitations therein. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005) (noting the RFC must only contain "credibly established limitations").

Moreover, the Court rejects Plaintiff's argument that the ALJ relied on his own inaccurate and unsupported lay interpretation of the record in crafting Plaintiff's RFC. Plaintiff's argument is essentially that the ALJ should have ordered a consultative examination on which to base the RFC given that the ALJ discounted many of the medical opinions and failed to understand the nature of Plaintiff's bipolar disorder and panic attacks. However, Plaintiff overlooks that while an ALJ *may* order a consultative examination to resolve an inconsistency or if the record is insufficient to render a decision,

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED.

s/Alan N. Bloch<br>United States District Judge

ecf:	Counsel of record

---

he or she is generally not required to do so. *See* 20 C.F.R. §§ 404.1519a, 404.1520b; *Thompson v. Halter*, 45 Fed. Appx. 146, 149 (3d Cir. 2002). The decision whether to order such an examination is within the sound discretion of the ALJ and "should be firmly rooted in an assessment of the evidence as a whole." *Woodman v. Berryhill*, Civ. No. 3:17-cv-151, 2018 WL 1056401, at *5 (M.D. Pa. Jan. 30, 2018); *see Thompson*, 45 Fed. Appx. at 149. For essentially the same reasons stated above, there was no insufficiency or inconsistency in the record that would suggest the need for a consultative examination and/or review of the record. This is particularly true given an ALJ's broad discretion in regard to this issue.

Lastly, the Court rejects Plaintiff's argument that the VE testimony was inadequate because it relied on an incomplete RFC. The Court notes that "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8. Hypotheticals posed to vocational experts need not reflect every impairment alleged by a claimant. *See id.* at 544. Instead, hypotheticals "must accurately convey to the vocational expert all of a claimant's credibly established limitations." *Id.* Substantial evidence supports the ALJ's RFC assessment, as analyzed above, and because the operative hypothetical accurately conveyed Plaintiff's RFC, the ALJ appropriately relied upon the vocational expert's response. (*See* R. 20, 63).

For all these reasons, the Court affirms the decision of the ALJ.